UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MY SIZE, INC.,<br>     *Plaintiff*,<br><br>    v.<br><br>DAVID LAZAR, CUSTODIAN VENTURES LLC, ACTIVIST INVESTING LLC, MILTON C. AULT III, AULT ALPHA LP, AULT ALPHA GP LLC, AULT CAPITAL MANAGEMENT LLC, AULT & COMPANY, INC., DAVID ABOUDI, PATRICK LONEY, and DAVID NATAN,<br><br>     *Defendants*. | Civil No. 1:21-cv-08585 |

PLAINTIFF MY SIZE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ORDER TO SHOW CAUSE

**MCDERMOTT WILL & EMERY LLP**
David K. Momborquette
M. Elias Berman
Timothy C. Cramton
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dmomborquette@mwe.com
eberman@mwe.com
tcramton@mwe.com

*Attorneys for My Size, Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

      A.      The Parties And Defendants' Activist Interest In The Company ........................... 3

      B.      The False and Misleading 13D Filings .................................................................. 5

      C.      The Company Uncovers A Secret, Unlawful Proxy Solicitation ........................... 7

ARGUMENT ................................................................................................................................. 9

      I.      The Court Should Grant My Size's Application for Limited
            Expedited Discovery .............................................................................................. 9

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*adMarketplace, Inc. v. Tee Support, Inc.*,
   No. 13-civ-5635, 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) ..............................................10

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) ................................................................................................9

*Digital Sin, Inc. v. Does 1-176*,
   279 F.R.D. 239 (S.D.N.Y. 2012) ................................................................................................9

*Int'l Banknote Co, Inc. v. Muller*,
   713 F. Supp. 612 (S.D.N.Y. 1989).............................................................................................11

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982)  .................................................................................................9

*OMG Fid., Inc. v. Sirius Techs.*,
   239 F.R.D. 300 (N.D.N.Y. 2006).........................................................................................10, 11

*Raza v. City of New York*,
   998 F. Supp. 2d 70 (E.D.N.Y. 2013)  ........................................................................................10

*Streamlight, Inc. v. Gindi*,
   No. 18-cv-987 (NG), 2018 WL 8967042 (E.D.N.Y. Apr. 23, 2018) ........................................10

**Statutes**

Exchange Act Section 13(d) ............................................................................................... *passim*

Exchange Act Section 14(a)................................................................................................ *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 26(d)....................................................................................9

Federal Rules of Civil Procedure Rule Rule 26(f)...........................................................................3

Plaintiff My Size, Inc. ("My Size" or "Company"), submits this memorandum of law in support of its motion for an order: (1) expediting discovery, including by directing Defendants to respond to Plaintiff's request for production of documents and produce responsive documents on an expedited basis, and to make Defendants available shortly thereafter for depositions; and (2) setting a briefing schedule and hearing date for Plaintiff's anticipated preliminary injunction motion.

## INTRODUCTION

This action arises from an unlawful scheme by an undisclosed group of activist investors to secretly conspire to acquire control of the Company. By this action, the Company seeks to remedy the irreparable harm caused to it, its shareholders and the investing public in general resulting from an unlawful proxy solicitation undertaken in connection with this scheme, and the filing with the Securities and Exchange Commission (the "SEC") of certain false and misleading Schedule 13Ds that omit material facts regarding the Defendants' arrangements, plans, and proposals with respect to the Company.

It is only recently that the Company has uncovered a covert effort by Defendant Lazar, on behalf of an undisclosed group of investors, to solicit proxies from other potential investors. Specifically, Mr. Lazar has been clandestinely contacting potential investors in the Company through the WhatsApp Messenger service in an apparent effort to solicit proxies of individuals to vote in favor of an insurgent slate of directors consisting of him and three other of the Defendants at the Company's next annual meeting. This solicitation violates the applicable Exchange Act proxy rules since there is no proxy statement on file with the SEC, and the form of the communication does not meet the stringent requirements for the solicitation of proxies in such circumstances. In addition, the solicitation strongly suggests that there exists an undisclosed group

of investors – which includes the Defendants and others who are working in tandem with the Defendants – to gain control of the Company.  However, none of the Section 13(d) filings made by any of the Defendants discloses the full extent of this group, as required by federal law.

Further, the Defendants have misrepresented in certain Schedule 13Ds that they have filed with the SEC the purpose underlying their purchases of the Company's securities, falsely indicating that such transactions primarily are for investment purposes, when in truth, the undisclosed purpose of these securities purchases was to effect a shell-style reverse merger or similar transaction replacing the Company's current business with an entirely different one, in complete disregard of the Company's ongoing business and its stockholders.  In fact, one day after filing a Schedule 13D with the SEC in which he stated that his securities purchases in the Company were for investment purposes only, Defendant Milton Ault was brazenly boasting on his YouTube channel that he thought My Size "should merge with another public company very similar to Ikonics and we are going to be pushing for them to take action and get the company into another business."

The Defendants' continuing failure to make timely and accurate disclosure of their actions, plans and agreements to date regarding the Company, as well as the improper solicitation of investors in clear violation of the federal securities laws denies the Company and its shareholders of material information to which they are clearly entitled.  Plaintiff and the holders of the Company's shares face the prospect of immediate, severe and irreparable injury should the Defendants be permitted to continue with their ongoing efforts to seek control of the Company, where key information has been omitted from SEC filings, and investors have been solicited for their proxies without the opportunity to evaluate all of the material information that the Exchange Act entitles them to receive.

Accordingly, the Company respectfully asks the Court to grant expedited discovery and expedited proceedings in aid of its anticipated preliminary injunction application. Plaintiff believes that the expedited discovery requested is narrowly tailored to the preliminary injunction it seeks and is reasonable under the circumstances. Plaintiff also requests that the Court set a preliminary injunction briefing schedule and hearing date to follow the requested expedited discovery.

## STATEMENT OF FACTS

A. The Parties And Defendants'
   Activist Interest In The Company

The Company is a Delaware corporation headquartered in Israel. It has developed and is commercializing a unique measurement technology based on sophisticated algorithms and cutting-edge technology with broad applications, including the apparel, e-commerce, DIY, shipping, and parcel delivery industries. The Company is listed on the Tel Aviv Stock Exchange and the Nasdaq Capital Market under the ticker symbol "MYSZ."

Defendant David Lazar is an activist investor. He is the sole member and Chief Executive Officer of both Defendants Custodian Ventures and Activist Investing, and utilizes those entities in connection with certain of his investment activities, including with respect to the Company. Defendant Custodian Ventures was, at one time, the largest stockholder of the Company. Defendant Lazar is a well-known player in the reverse merger world and is known to buy and sell so-called "shell" companies. A reverse merger typically involves a transaction whereby a shell entity is merged into another company to form a new publicly traded entity. One perceived advantage of a reverse merger is that it permits an entity to become a public company without having to go through the relatively more time-consuming and expensive IPO process.

Defendant Milton Ault also is an activist investor. He was formerly registered with FINRA until 2010, and in 2012 was sanctioned by FINRA resulting in a two-year suspension from association with any FINRA member, a fine of $75,000 and $312,916.06 in restitution for effecting transactions in customer accounts without their knowledge, authorization or consent, failing to remit payment for a securities transactions and failing to deliver securities to the customer. (*See* Declaration of David K. Momborquette in Support of Plaintiff's Order to Show Cause, dated October 19, 2021 ("Momborquette Decl."), ¶ 2, Exh. 1 at 7-10.)

In addition, it has been publicly disclosed that Mr. Ault's main holding vehicle, Ault Global Holdings, Inc. (formerly known as DPW Holdings, Inc.) has received an order and a subpoena in an SEC investigation known as "In the Matter of DPW Holdings, Inc." (*Id*. ¶ 3, Exh. 2 at 11-12.) He has appeared in a number YouTube.com videos that focus on investing, including programs entitled "Risk On," "I've Given You Gold Now Run With It," and "Ault-onomous Podcasts," among others. (*Id*. ¶ 4, Exh. 3.) He utilizes the Ault Defendant entities in connection with certain of his investment activity, including with respect to the Company.

Defendants Lazar and Ault are no strangers to one another. Both have taken activist positions in the same companies, and on at least one occasion, the two have engaged in transactions directly with one another with respect to securities in certain of those companies. For instance, according to a Schedule 13D filed with the SEC on December 10, 2020 in respect of Universal Security Instruments, Inc. ("USI"), Ault Holdings, a company in which Mr. Ault serves as Executive Chairman, entered into a letter agreement pursuant to which it agreed to purchase 228,967 shares beneficially owned by Activist Investing and certain of its affiliates. (*Id*. ¶ 5, Exh. 4 at 3-4.) These shares constituted 9.9% of USI's outstanding common stock at the time. (*See id*. at 4.) Similarly, according to a Schedule 13D filed with the SEC on November 2, 2020 by

4

Defendants Lazar, Custodian Ventures and Activist Investing, Mr. Lazar acquired a 9.8% interest in a company known as Ikonics Corporation ("Ikonics"). (*Id.* ¶ 6, Exh. 5 at 6-7.) According to a Schedule 13D filed with the SEC on January 14, 2021 by Ault Holdings, Ault Holdings subsequently acquired a 7.12% interest in Ikonics. (*Id.* ¶ 7, Exh. 6 at 3-4.)

On May 12, 2021, Defendant Custodian Ventures delivered a letter to the Company purporting to nominate Defendants Lazar, Aboudi, Loney, and Natan as directors for election at the Company's next annual meeting of stockholders (the "Insurgent Slate"), an election which could result in a change of control of the Company. (*See id.* ¶ 8, Exh. 7 at 9.) On June 1, 2021, Defendant Custodian Ventures submitted a books and records request to the Company. (*Id.* ¶ 9, Exh. 8 at 8.) On July 1, 2001, the Lazar Defendants filed with the SEC materials announcing their intent to file a proxy statement to be used to solicit votes for the election of the Insurgent Slate. (*Id.* ¶ 10, Exh. 9 at 3-4.) In addition, Defendant Custodian Ventures recently sued the Company in the Court of Chancery of the State of Delaware to compel the Company to immediately hold its annual meeting for the election of directors. (*Id.* ¶ 11, Exh. 10 at 1-2.)

B.   The False and Misleading 13D Filings

Defendants have accumulated a massive position in the Company's common stock, controlling by the end of September 2021 close to 20% of the Company's outstanding stock in total. Given the magnitude of their holdings, the Lazar Defendants and the Ault Defendants were obligated to make certain filings with the SEC under Section 13(d) of the Exchange Act. Specifically:

- On May 14, 2021, the Lazar Defendants filed a Schedule 13D with the SEC (the "Lazar Schedule 13D") (*id.* ¶ 8, Exh. 7);

- On June 2, 2021, the Lazar Defendants filed a Schedule 13D/A with the SEC (the "First Lazar Schedule 13D/A") (*id.* ¶ 9, Exh. 8);

- On September 23, 2021, the Lazar Defendants filed a Schedule 13D/A with the SEC (the "Lazar Second Schedule 13D/A") (*id.* ¶ 12, Exh. 11); and

- On September 23, 2021, the Ault Defendants filed a Schedule 13D with the Commission in respect of the Company (the "Ault Schedule 13D") (*id.* ¶ 13, Exh. 12).

Under Section 13(d), a "person" who acquires "beneficial ownership" of 5% of a class of stock has disclosure obligations that must be timely fulfilled. A "person" includes a "group," and the definition of "group" captures contracts, arrangements, understandings and relationships to act together to hold, vote, acquire or dispose of shares. A "group" is deemed to have acquired "beneficial ownership" of all equity securities beneficially owned by the members of the group as of the date of formation of the group.

The Lazar Schedule 13Ds disclose the existence of a group consisting only of the Lazar Defendants (the "Lazar Group") (*see id.* ¶ 8, Exh. 7 at 8, 12), and the Ault Schedule 13D discloses the existence of a group that consists only of the Ault Defendants (the "Ault Group"). (*See id.* ¶ 13, Exh. 12 at 7.) However, the Ault Schedule 13D does not include the Lazar Group in the list of those persons or entities who may be deemed to be members of a "group" within the meaning of Section 13(d)(3) of the Exchange Act. (*See id.*) Similarly, the Lazar Second Schedule 13D/A filed also on September 23, 2021 did not list the Ault Group in the list of those individuals or entities who may be deemed to be members of a "group" within the meaning of Section 13(d)(3) of the Exchange Act. (*See id.* ¶ 8, Exh. 7 at 8.)

In addition, the Lazar Schedule 13Ds referenced above represent in Item 4 that the purpose of the securities transactions referenced therein was for investment purposes and to nominate the Insurgent Slate, and affirmatively state that "[n]o Reporting Person has any present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D except as set forth herein or such as would occur upon or in connection

6

with completion of, or following, any of the actions discussed herein." (*Id*. at 10.) These representations violate subparagraph (b) of 17 C.F.R. § 240.13d-101, which requires that a reporting person describe any plan or proposal relating to "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries." Notwithstanding Defendants' repeated public statements regarding their investment in the Company, Defendants failed to disclose any plan or proposal to effect a reverse merger or other extraordinary corporate transaction for the Company, even though that is their intention.

Similarly, the Ault Schedule 13D referenced above represents in Item 4 that the purpose of the transaction was for investment purposes and affirmatively states that "[t]he Reporting Persons do not have a present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D except as set forth herein or such as would occur upon or in connection with completion of, or following, any of the actions discussed herein." (*Id*. ¶ 13, Exh. 12 at 8.) However, Ault's true purpose is to effect an extraordinary corporate action, as set forth above.

C.  The Company Uncovers A Secret, Unlawful Proxy Solicitation

Following the filing of the last Schedule 13D referenced above, the Company uncovered several facts which raise serious questions about the legality of Defendants' actions with respect to the Company, including the veracity of their respective filings with the SEC. In particular, the Company has recently come into possession of a covert communication that Mr. Lazar sent to a third party using the WhatsApp messaging service (the "Solicitation Message"). (Affirmation of Ronen Luzon in Support of Plaintiff's Order to Show Cause, dated October 18, 2021 (the "Luzon Aff."), ¶ 3, Exh. 1.) The Solicitation Message is dated September 29, 2021, and is described as an update. (*Id*.) It notes that Defendant Lazar has sued the Company to compel it to set a date for its annual meeting. (*Id*.) The message goes on to inform the recipient that at the then-scheduled trial

date in his lawsuit, Defendant Lazar intends to request that the record date for eligibility to vote at the Company's next annual meeting be immediately set for that day. (*Id*.) Defendant Lazar then instructs the recipient of the message as to when to purchase shares in the Company so that those shares could be voted at the Company's next annual meeting given the record date he intends to demand be set. (*Id*.) The text of the Solicitation Message is reproduced in full as follows:

> Just wanted to give you an updated [sic] regarding the MYSZ situation:
>
> MYSZ decided that they do not have to hold the Annual meeting on this this year, according to Delaware law it is every 13 months. September 12th was the deadline for the 13 months.
>
> Therefore, I took MYSZ to court in Delaware. The hearing date is Tuesday Oct 5. At the court hearing I will be asking the Judge to set the record date for immediately that day. If you are thinking of buying shares, jusk [sic] keep in mind T+2 so settlement would take 2 days.
>
> With that being said, the last day to buy shares in order to vote them would be Friday. There is no guarantee that the Judge with [sic] immediately set the record date for Tuesday October 5th, but there is a potential possibility. I am being on the more cautious side, but obviously better to be earlier than late.

(*See id*.)

      The Solicitation Message was sent at a time when no proxy had been filed with the SEC, and in a manner that does not qualify in the Exchange Act rules for an exception to the prohibition on such solicitations in such circumstances.

      In addition, the day after the September 23, 2021 filing of the Ault Schedule 13D and the Lazar Second Schedule 13D/A, Defendant Ault was publicly boasting in one of his YouTube videos about his investment in the Company, stating the following:

> We announced a position in My Size, we have bought 9.9% of it . . . we think this company should merge with another public company very similar to Ikonics and we are going to be pushing for them to take action and get the company into another business.

8

(A link to this clip can be found at https://www.youtube.com/watch?v=5O50uqOVhVU (the "Ault YouTube Clip"), with the above-quoted passage beginning at 14:38). Defendant Ault further acknowledges his relationship with Defendant Lazar, admitting that they have done deals together in the past, and disclosing that they collectively control 20% of the Company's outstanding stock. (*Id*. at 16:22.)

Defendants have engaged in an ongoing and unlawful solicitation of proxies, as well as made certain false and misleading Section 13(d) filings with the SEC that omit material facts regarding the Defendants' arrangements, plans, and proposals with respect to the Company, all of which justifies the relief sought herein

## ARGUMENT

**I.    The Court Should Grant My Size's Application for Limited Expedited Discovery**

Under Rule 26(d) of the Federal Rules of Civil Procedure, a party may seek discovery prior to the Rule 26(f) conference when authorized by Court order. *See* Fed. R. Civ. P. 26(d) adv. cmte. note (1993) ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction.") Courts apply a "flexible standard of reasonableness and good cause to determine whether expedited discovery is appropriate." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (finding that "in deciding on a matter merely of regulating the timing of discovery, it makes sense to examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.")).[1]

---

[1] Some courts in this Circuit have also applied a four-factor test set out in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which requires a party seeking expedited discovery to show: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater

9

Here, the entirety of the record demonstrates that expedited discovery is necessary and reasonable. My Size has alleged that Defendants are engaging in an ongoing, unlawful proxy solicitation and have filed false and misleading Schedule 13D filings. My Size should be permitted to take discovery regarding the existence and scope of Defendants' unlawful solicitation, as well as the full nature, extent, and purpose of any agreements, understandings or arrangements that any of the Defendants may have with one another or other persons regarding the Company or its securities. Accordingly, My Size has good cause to seek and obtain limited expedited discovery before a Rule 26(f) conference and the initial pretrial conference, and to accelerate the timeframe that defendants are typically allotted for responding to discovery requests, produce documents and sit for deposition.

Expedited discovery is also appropriate because absent this relief, the Company and its stockholders will continue to be harmed by the unlawful proxy solicitation and for the false and misleading Schedule 13Ds. It is highly likely that, absent expedited discovery, My Size and its stockholders will be permanently prejudiced because the ordinary course of discovery under the Federal Rules of Civil Procedure would be ineffective, as Defendants' mistruths will continue to saturate the market, and My Size, its stockholders, and the investing public in general will be deprived of relevant and accurate information to which they are entitled under federal law. *See adMarketplace, Inc. v. Tee Support, Inc.*, No. 13-civ-5635, 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (finding good cause for expedited discovery where plaintiff "has a potentially meritorious claim and no ability to enforce it absent expedited discovery"); *OMG Fid., Inc. v.*

---

than the injury the defendant will suffer if the expedited relief is granted." This framework "makes little sense, since it requires a showing of 'some probability of success on the merits' before the moving party has obtained any discovery." *See Raza v. City of New York*, 998 F. Supp. 2d 70, 75 (E.D.N.Y. 2013); *see also Streamlight, Inc. v. Gindi*, No. 18-cv-987 (NG), 2018 WL 8967042, at *2 (E.D.N.Y. Apr. 23, 2018) (applying "the reasonableness standard, which is considered to be more liberal and flexible").

*Sirius Techs.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (granting motion for expedited discovery sought in support of a motion for a preliminary injunction because plaintiff would "potentially be unfairly prejudiced" should motion be denied).

Additionally, the requests are reasonable under the circumstances and pose no undue hardship to Defendants. My Size's document requests are limited in scope, the Company only requests only party depositions at this time, the number of which likely can be paired down by the use of one corporate representative for multiple defendants. (Momborquette Decl. ¶ 14, Exh. 13.) Courts have ordered expedited discovery in similar cases seeking preliminary injunctive relief to enjoin false and misleading proxy solicitations and/or related securities law violations. *Int'l Banknote Co,, Inc. v. Muller*, 713 F. Supp. 612, 613 (S.D.N.Y. 1989) (noting court "granted plaintiff's request for expedited discovery" in connection with plaintiff corporation's motion for preliminary injunction in action brought by plaintiff alleging that defendants violated sections 13(d) and 14(a) of the Exchange Act).

My Size respectfully requests that the Court: (1) expedite discovery, including by directing Defendants to respond to Plaintiff's request for production of documents and produce responsive documents on an expedited basis, and to make Defendants available shortly thereafter for depositions; and (2) set a briefing schedule and hearing date for Plaintiff's anticipated preliminary injunction motion .

## **CONCLUSION**

For the reasons stated above, this Court should grant My Size's order to show cause, entering the proposed preliminary injunction briefing schedule, and setting a hearing date on Plaintiff's preliminary injunction motion.

Dated: October 19, 2021

By: /s/ *David K. Momborquette*

MCDERMOTT WILL & EMERY LLP
David K. Momborquette
M. Elias Berman
Timothy C. Cramton
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dmomborquette@mwe.com
eberman@mwe.com
tcramton@mwe.com

*Counsel for My Size, Inc.*