UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MY SIZE, INC.,<br>                      *Plaintiff*,<br><br>                        *v.*<br><br>DAVID LAZAR, CUSTODIAN VENTURES LLC, ACTIVIST INVESTING LLC, MILTON C. AULT III, AULT ALPHA LP, AULT ALPHA GP LLC, AULT CAPITAL MANAGEMENT LLC, AULT & COMPANY, INC., DAVID ABOUDI, PATRICK LONEY, and DAVID NATAN,<br><br>                     *Defendants*. | Civil No. |

## COMPLAINT

Plaintiff My Size, Inc. (the "Company"), by its undersigned counsel, for its Complaint against Defendants David Lazar, Custodian Ventures LLC ("Custodian Ventures"), Activist Investing LLC ("Activist Investing"), David Aboudi, Patrick Loney, and David Natan (Mr. Aboudi, Mr. Loney, and Mr. Natan together with Mr. Lazar, Custodian Ventures and Activist Investing, the "Lazar Defendants"), Milton C. Ault III, Ault Alpha LP ("Ault Alpha"), Ault Alpha GP LLC ("Ault Alpha GP"), Ault Capital Management LLC ("Ault Capital"), Ault & Company, Inc. ("Ault & Company" and together with Mr. Ault, Ault Alpha, Ault Alpha GP, Ault Capital and Ault & Company, the "Ault Defendants"), alleges, on knowledge as to itself and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.     This action arises under the United States Securities and Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78m(d), and seeks, among other things, immediate injunctive relief against an unlawfully formed and undisclosed wolf pack of raider investors in

connection with their joint scheme to acquire control of the Company.  By this action, the Company seeks to remedy the irreparable harm caused to it and its stockholders by an unlawful proxy solicitation undertaken in connection with this scheme, and the filing with the Securities and Exchange Commission (the "SEC") of certain false and misleading Schedule 13Ds that omit material facts regarding the Defendants' arrangements, plans, and proposals with respect to the Company.

2. The Company is a Delaware corporation headquartered in Israel.  It is listed on the Tel Aviv Stock Exchange and the Nasdaq Capital Market.  Holders of the Company's securities are subject to and required to comply with Section 13(d) of the Exchange Act, as well as all other applicable provisions of the federal securities laws including the Exchange Act's proxy rules.

3. Defendants Lazar and Ault are what is often referred to as "activist investors." An activist investor is generally defined as an investor that buys a significant stake in a public company in order to influence how that company is managed, such as by obtaining seats on its board of directors.

4. Defendants Lazar and Ault are no strangers to one another.  Defendant Ault has taken activist positions in the same companies in the past as Defendant Lazar, and the two have engaged in transactions directly with one another with respect to securities in certain of those companies.

5. Defendants Lazar and Ault also are no strangers to a type of transaction known as a "reverse merger."  A reverse merger usually involves a transaction whereby a shell entity is merged into another company to form a new publicly traded entity.  One perceived advantage of a reverse merger is that it permits an entity to become a public company without having to go through the relatively more time-consuming and expensive IPO process.

6. Defendants have engaged over the last year in a number of moves that highlight their desire to seize control of the Company. For instance, on May 12, 2021, Defendant Custodian Ventures delivered a letter to the Company purporting to nominate Messrs. Lazar, Aboudi, Loney, and Natan as directors for election at the Company's next annual meeting of stockholders (the "Insurgent Slate"). If successful, the election of the Insurgent Slate could result in a change of control of the Company. In materials subsequently filed with the SEC, the Lazar Defendants announced their intent to file a proxy statement to be used to solicit votes for the election of the Insurgent Slate. In June 2021, Defendant Custodian Ventures submitted a books and records demand to the Company. In September 2021, Defendant Custodian Ventures sued the Company in the Court of Chancery of the State of Delaware to compel the Company to hold its Annual meeting for the elections of directors.[1] That action remains pending with a trial on the merits scheduled for November 10, 2021.

7. Further, the Company has recently uncovered the fact that Defendant Lazar has been clandestinely contacting potential investors in the Company utilizing the WhatsApp Messenger service to solicit proxies to vote in favor of the Insurgent Slate at the Company's next annual meeting. This solicitation is a violation of the Exchange Act proxy rules since there is no proxy statement on file with the SEC and the form of the communication does not meet the stringent requirements for the solicitation of proxies in such circumstances.

8. In addition to engaging in an unlawful proxy solicitation, both the Lazar Defendants and the Ault Defendants have made false and misleading Section 13(d) filings with the SEC. In particular, at some undisclosed time and place, the Lazar Defendants and the Ault Defendants (and likely others) entered into one or more undisclosed contracts, arrangements, understandings

---

[1] Pursuant to NASDAQ Listing Rule 5620(a), NASDAQ-listed companies are required to hold an annual meeting of stockholders.

or relationships to gain control of the Company (the "Lazar/Ault Group"). However, none of the Section 13(d) filings made by the Lazar Defendants or the Ault Defendants disclose the existence of the Lazar/Ault Group as required by federal law.

9. Further, both the Lazar Defendants and the Ault Defendants have misrepresented in certain Schedule 13Ds filed with the SEC the purpose underlying their purchases of the Company's securities, falsely indicating that such transactions primarily are for investment purposes, when in truth, the undisclosed purpose of these securities purchases was to effect a shell style reverse merger or other similar transaction replacing the Company's current business with an entirely different one in complete disregard of the Company's ongoing business and its stockholders.

10. The Defendants' continuing failure to make timely and accurate disclosure of their actions, plans and agreements to date regarding the Company, as well as their engaging in an improper proxy solicitation in violation of the federal securities laws, denies the Company and its shareholders of material information to which they clearly are entitled.

11. Plaintiff and the holders of the Company's shares face the prospect of immediate, severe and irreparable injury should the Defendants be permitted to continue with their ongoing efforts to seek control of the Company, where key information has been omitted from SEC filings, and at least one investor's proxy has been solicited, without the opportunity to evaluate all of the material information that the Exchange Act entitles him to receive.

## **THE PARTIES**

12. Plaintiff My Size, Inc. is a Delaware corporation headquartered in Israel. It has developed and is commercializing a unique measurement technology based on sophisticated algorithms and cutting-edge technology with broad applications, including the apparel, e-commerce, DIY, shipping, and parcel delivery industries. The Company is listed on the Tel Aviv

Stock Exchange and the Nasdaq Capital Market under the ticker symbol "MYSZ." Holders of the Company's shares are subject to and required to comply with Section 13(d) of the Exchange Act, as well as all other applicable provisions of the federal securities laws.

13. Defendant David Lazar is an activist investor. He is the sole member and Chief Executive Officer of both Custodian Ventures and Activist Investing. He is a U.S. citizen with his primary business office in New York City.

14. Defendant Custodian Ventures is a Wyoming limited liability company that acts as an investment fund specializing in reverse mergers and other event-driven opportunities.

15. Defendant Activist Investing is a New York limited liability company that invests in distressed public companies. Its principal place of business is New York City.

16. Defendant David Aboudi is a citizen of both the United States and Israel.

17. Defendant Patrick Loney is a U.S. citizen with his primary business office in the State of Washington. He is the founder of Mintwood Advisory LLC.

18. Defendant David Natan is a U.S. citizen with his primary business office in the State of Florida.

19. Defendant Milton Ault is a U.S. citizen, and upon information and belief, is a resident of California. Mr. Ault was formerly registered with FINRA until 2010, and in 2012 was sanctioned by FINRA, resulting in a two-year suspension from association with any FINRA member, a fine of $75,000 and $312,916.06 in restitution for effecting transactions in customer accounts without their knowledge, authorization or consent, failing to remit payment for a securities transactions and failing to deliver securities to the customer. In addition, it has been publicly disclosed that Mr. Ault's main holding vehicle, Ault Global Holdings, Inc. (formerly known as DPW Holdings, Inc.) received an order and a subpoena in an SEC investigation known

as "In the Matter of DPW Holdings, Inc." He has appeared on a number of playlists on YouTube.com that focus on investing, including programs entitled "Risk On," "I've Given You Gold Now Run With It," and "Ault-onomous Podcasts," among others.

20. Defendant Ault Alpha is a Delaware limited partnership with its principal place of business in Las Vegas, Nevada. Defendant Milton Ault is the Chief Executive Officer of Ault Alpha.

21. Defendant Ault Alpha GP is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada, and is the general partner of Ault Alpha.

22. Defendant Ault Capital is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada, and is the GP of Ault Alpha GP as well as the investment manager of Ault Alpha. Defendant Milton Ault is the Chief Executive Officer of Ault Capital.

23. Defendant Ault & Company is a Delaware corporation with its principal place of business in Las Vegas, Nevada, and is the sole member of Ault Alpha GP and Ault Capital. Milton Ault is the CEO and Chairman of the Board of Directors.

## JURISDICTION AND VENUE

24. The claims asserted herein arise under Sections 14(a) and 13(d) of the Exchange Act, and the rules and regulation promulgated thereunder.

25. This court has jurisdiction over the action pursuant to 15 U.S.C. § 78aa of the Exchange Act.

26. Venue is proper in this judicial district pursuant to 15 U.S.C. § 78a and 28 U.S.C. § 1391 of the Exchange Act. One or more of the acts and transactions complained of herein have occurred, are occurring, and unless enjoined, will continue to occur in this judicial district.

**FACTUAL BACKGROUND**

**The Unlawful Proxy Solicitation**

27. The Company is a Delaware corporation headquartered in Israel. It has developed and is commercializing a unique measurement technology based on sophisticated algorithms and cutting-edge technology with broad applications, including the apparel, e-commerce, DIY, shipping, and parcel delivery industries. The Company is listed on the Tel Aviv Stock Exchange and the Nasdaq Capital Market under the ticker symbol "MYSZ."

28. Since at least May 2021, the Lazar/Ault Group has been engaged in a wolf pack campaign to gain control of the Company through the use of an unlawful proxy solicitation and the filing with the SEC of certain false and misleading Schedule 13Ds which misstate the true purpose underlying the Defendants' purchase of shares in the Company, as well as the identity of those individuals and entities that have agreed to act in concert to gain control of the company.

29. Defendants clearly want control of the Company. For instance, on May 12, 2021, Defendant Custodian Ventures delivered a letter to the Company purporting to nominate the Insurgent Slate for election at the Company's 2021 annual meeting of stockholders, an election which could result in a change of control of the Company. On June 1, 2021, Defendant Custodian Ventures submitted a books and records request to the Company. On July 1, 2001, the Lazar Defendants filed with the SEC additional materials announcing their intent to file a proxy statement to be used to solicit votes for the election of the Insurgent Slate. In addition, Defendant Custodian recently sued the Company in the Court of Chancery of the State of Delaware to compel the Company to immediately hold its annual meeting for the election of directors.

30. Moreover, the Company has recently come into possession of a communication that Mr. Lazar sent to a third party using the WhatsApp messaging service at the Company's annual meeting (the "Solicitation Message"). The Solicitation Message is dated September 29,

7

2021, and is described as an update. It notes that Defendant Lazar has sued the Company to compel it to set a date for its annual meeting. The message goes on to inform the recipient that at the then-scheduled hearing date on his lawsuit, he intends to request that the record date for eligibility to vote at the Company's next annual meeting be immediately set for that day. Defendant Lazar then instructs the recipient of the message as to when to purchase shares in the Company so that those shares could be voted at the Company's next annual meeting given the record date he intends to demand be set. The Solicitation Message was sent at a time when no proxy has been filed with the SEC, and in a manner that does not qualify in the Exchange Act rules for an exception to the prohibition on such solicitations. The text of the Solicitation Message is reproduced in full as follows:

> Just wanted to give you an updated [sic] regarding the MYSZ situation:
>
> MYSZ decided that they do not have to hold the Annual meeting on this this year, according to Delaware law it is every 13 months. September 12th was the deadline for the 13 months.
>
> Therefore, I took MYSZ to court in Delaware. The hearing date is Tuesday Oct 5. At the court hearing I will be asking the Judge to set the record date for immediately that day. If you are thinking of buying shares, jusk [sic] keep in mind T+2 so settlement would take 2 days.
>
> With that being said, the last day to buy shares in order to vote them would be Friday. There is no guarantee that the Judge with [sic] immediately set the record date for Tuesday October 5th, but there is a potential possibility. I am being on the more cautious side, but obviously better to be earlier than late.

31. Among other things, the aforementioned Solicitation Message violates both Rule 14a-3 and Rule 14a-12 promulgated under Section 14(a) of the Exchange Act. Rule 14a-3(a) provides, in part, that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) A publicly-filed

8

preliminary or definitive proxy statement, in the form and manner described in § 240.14a-16, containing the information specified in Schedule 14A (§ 240.14a-101) . . ." As noted above, there is no such proxy statement on file with the SEC.

32.     Rule 14a-12 provides, in part, that: "(a) [n]otwithstanding the provisions of § 240.14a-3(a), a solicitation may be made before furnishing security holders with a proxy statement meeting the requirements of § 240.14a-3(a) if: (1) Each written communication includes: (i) The identity of the participants in the solicitation . . . and a description of their direct or indirect interests . . . or a prominent legend in clear, plain language advising security holders where they can obtain that information; and (ii) A prominent legend in clear, plain language advising security holders to read the proxy statement when it is available . . . (b) Any soliciting material published, sent or given to security holders in accordance with paragraph (a) of this section must be filed with the Commission no later than the date the material is first published, sent or given to security holders . . . [and with] each national securities exchange upon which any class of securities of the registrant is listed and registered." The Solicitation Message clearly is not in the form that would bring it within the purview of Rule 14a-12.

**The False and Misleading 13D Filings**

33.     Defendants have managed to accumulate a massive position in the Company's stock, controlling by the end of September 2021 close to 20% of the Company's outstanding stock. Given the magnitude of their holdings, the Lazar Defendants and the Ault Defendants were obligated to make certain filings with the SEC under Section 13(d) of the Exchange Act.

34.     The purpose of Section 13(d) is among other things, to permit companies, their shareholders and the investing public generally to (i) be aware of accumulations of blocks of stock in excess of five percent of the outstanding shares of any equity security, (ii) ascertain the background of, and other pertinent information relating to, the holders of such blocks-and the

persons who control such holders- with respect to the particular issuer in question, all with a view toward giving shareholders and the public an early alert to the possibility of a change in control and enabling them to make informed investment decisions based upon full disclosure of all relevant and material information concerning persons and the plans of the persons who may seek control.

35. To date, the Defendants have made the following 13(d) filings in respect to the Company:

- On May 14, 2021, the Lazar Defendants filed a Schedule 13D with the SEC (the "Lazar Schedule 13D"),

- On June 2, 2021, the Lazar Defendants filed a Schedule 13D/A with the SEC (the "First Lazar Schedule 13D/A"),

- On September 23, 2021, the Lazar Defendants filed a Schedule 13D/A with the SEC (the "Lazar Second Schedule 13D/A"), and

- On September 23, 2021, the Ault Defendants filed a Schedule 13D with the Commission in respect of the Company (the "Ault Schedule 13D").

36. As described below, these filings misstate and omit key information that is required to be disclosed under the federal securities laws.

**Undisclosed Section 13(d) Group Membership**

37. Under Section 13(d), a "person" who acquires "beneficial ownership" of 5% of a class of stock has disclosure obligations that must be timely fulfilled. A "person" includes a "group," and the definition of "group" captures contracts, arrangements, understandings and relationships to act together to hold, vote, acquire or dispose of shares. A "group" is deemed to have acquired "beneficial ownership" of all equity securities beneficially owned by the members of the group as of the date of formation of the group.

38. The Solicitation Message is clear evidence that Mr. Lazar is surreptitiously building a coalition of voters in advance of the Company's next annual meeting in a manner designed to evade disclosure of the voting power of this group. The framing of the message as an "update" attests that Mr. Lazar is communicating with the recipient as part of an ongoing process, and the generic nature of the message strongly suggests that this process involves other similar communications with other potential investors that likely constitute an undisclosed group.

39. That undisclosed group likely includes the Ault Defendants. Upon information and belief, Mr. Lazar and Mr. Ault are communicating with each other about their investment in, and plans for, the Company only through an attorney working in an entity affiliated with the Ault Group so as to be able to shield their communications from third parties.

40. Mr. Lazar and Mr. Ault have taken activist positions in the same companies in the past, and have engaged in transactions directly with one another on at least one occasion with respect to securities in certain of those companies. On at least one occasion, according to a Schedule 13D filed with the SEC on December 10, 2020 in respect of Universal Security Instruments, Inc. ("USI"), Ault Holdings, a company in which Mr. Ault serves as Executive Chairman, entered into a letter agreement pursuant to which it agreed to purchase 228,967 shares beneficially owned by Activist Investing and certain of its affiliates. These shares constituted 9.9% of USI's outstanding common stock at the time.

41. Similarly, according to a Schedule 13D filed with the SEC on November 2, 2020 by Mr. Lazar, Custodian Ventures and Activist Investing, Mr. Lazar acquired a 9.8% interest in a company known as Ikonics Corporation ("Ikonics"). According to a Schedule 13D filed with the SEC on January 14, 2021 by Ault Holdings, Ault Holdings subsequently acquired a 7.12% interest in Ikonics.

42. The Ault Schedule 13D (filed the very same day as the Lazar Second Schedule 13D/A), does not include the Lazar Group in the list of individuals who may be deemed to be members of a "group" within the meaning of Section 13(d)(3) of the Exchange Act. Similarly, the Lazar Second Schedule 13D/A filed also on September 23, 2021 did not list the Ault Group in the list of individuals who may be deemed to be members of a "group" within the meaning of Section 13(d)(3) of the Exchange Act.

43. However, given Mr. Lazar's unlawful proxy solicitation efforts, as well as his similar investment strategy and overlapping investments with Mr. Ault, it strains credulity to suppose that the Lazar Defendants and Ault Defendants are not collaborating with respect to the Company's stock in a manner that would render them a "group" for purposes of Section 13(d).

**Misstatements Regarding Purpose**

44. The Lazar Schedule 13Ds referenced above represent in Item 4 that the purpose of the securities transactions referenced therein was for investment purposes and to nominate the Insurgent Slate, and affirmatively state that "[n]o Reporting Person has any present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D except as set forth herein or such as would occur upon or in connection with completion of, or following, any of the actions discussed herein." In particular, subparagraph (b) of Item 4 of Schedule 13D refers to "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries" and subparagraph (c) of Item 4 of Schedule 13D refers to "[a] sale or transfer of a material amount of assets of the issuer or any of its subsidiaries."

45. Similarly, the Ault Schedule 13D referenced above represents in Item 4 that the purpose of the transaction was for investment purposes and affirmatively states that "[t]he

Reporting Persons do not have a present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a) - (j) of Item 4 of Schedule 13D except as set forth herein or such as would occur upon or in connection with completion of, or following, any of the actions discussed herein."

46. These statements regarding the purpose underlying the share purchases made by the Lazar Defendants and the Ault Defendants are not accurate. Contrary to the statements made in their public filings with the SEC, the primary purpose underlying these purchases is to effect a shell style reverse merger transaction replacing the Company's current business with an entirely different business in complete disregard of the Company's ongoing business and its stockholders.

47. Defendant Lazar is a well-known player in the reverse merger world and is known to buy and sell "shell" companies. As noted above, it is clear that he wants to control the Company for his own self-interested purposes, and in fact had reached out to the Company earlier this year to discuss the Company's future.

48. Defendant Ault has the same plans for the Company as Defendant Lazar, and has been quite explicit about this in public pronouncements. In particular, in Episode 137 of his YouTube channel show entitled "Risk On" (broadcasted the day after the filing of the Ault Schedule 13D and the Lazar Second Schedule 13D/A), Mr. Ault boasted at 14:38 minutes into the show about his investment in the Company, stating the following:

> We announced a position in My Size, we have bought 9.9% of it…we think this company should merge with another public company very similar to Ikonics and we are going to be pushing for them to take action and get the company into another business.

49. At 16:22 minutes into the program, he admitted that he had done deals with Defendant Lazar in the past, and that collectively they controlled 20% of the outstanding stock in

the Company.[2]

50. The actions and statements by Messrs. Lazar and Ault paint a very different picture regarding their purpose in investing in the Company than the one described in their filings with the SEC.

## FIRST CLAIM FOR RELIEF

### (Violation of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-12)

51. The Company hereby incorporates the allegations contained in paragraphs 1-50 as if fully set forth herein.

52. Rule 14a-3(a) promulgated under Section 14(a) of the Exchange Act provides, in part, that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) A publicly-filed preliminary or definitive proxy statement, in the form and manner described in § 240.14a-16, containing the information specified in Schedule 14A (§ 240.14a-101) . . ."

53. Rule 14a-12 provides that a solicitation may be made before furnishing a proxy statement if each written communication includes the identity of the participants in the solicitation and "a description of their direct or indirect interests, by security holdings or otherwise, or a prominent legend in clear, plain language advising security holders where they can obtain that information[.]" 17 C.F.R. § 240.14a-12.

54. The Solicitation Message sent by Defendant Lazar, acting as agent for the Lazar/Ault Group, constitutes a solicitation, pursuant to the definition in Rule 14a-1(l), 17 C.F.R. § 240.14a-1(l).

---

[2] A link to this clip can be found at https://www.youtube.com/watch?v=5O50uqOVhVU.

55. No preliminary or definitive proxy statement had been publicly filed at the time the Solicitation Message was sent, and therefore no such document was concurrently furnished to the recipient of the Solicitation Message.

56. In addition, the form of the Solicitation Message does not fall into any of the exceptions to Exchange Act Rule 14a-3(a) delineated in Exchange Act Rule 14a-12.

57. Accordingly, Defendants have violated Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-12 promulgated thereunder.

58. The Company has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

**(Violation of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101)**

59. The Company hereby incorporates the allegations contained in paragraphs 1-58 as if fully set forth herein.

60. Section 13(d) of the Exchange Act requires that investors acting as a group for the purpose of acquiring, holding, or trading the stock of an issuer disclose the group's existence and make plain their intentions through a Schedule 13D within ten days after group members collectively acquire the beneficial ownership of 5% or more of the issuer's stock.

61. Rule 13d-5(b)(1) provides that when two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of the issuer's stock, the group shall be deemed to have acquired beneficial ownership for purposes of Section 13(d) of the Exchange Act.

62. The Lazar Defendants are acting as a group with the Ault Defendants and others within the meaning of Rule 13d-5 and collectively were the beneficial owners of more than five percent of the Company's common stock.

63. Despite the formation of a group, the Lazar Defendants and the Ault Defendants did not disclose the existence of this group in their respective Schedules 13D filed with the SEC, and thus failed to make the full and fair disclosure required by the Exchange Act and the rules promulgated thereunder. Among other things, they have failed to disclose (i) that they are members of a group pursuant to Section 13(d); (ii) their collective beneficial ownership of the Company's common stock; and (iii) any common arrangements or understandings among them.

64. Accordingly, the Lazar Defendants and the Ault Defendants have violated, and continue to violate Section 13(d) of the Exchange Act and Rule 13d-1 promulgated thereunder.

65. The Company has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Violation of Section 13(d) of the Exchange Act and Rule 13d-101)

66. The Company hereby incorporates the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67. Section 13(d) of the Exchange Act requires certain disclosures to be filed on a Schedule 13D by a person that acquires an interest in more than 5% of certain classes of securities. 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-101.

68. Item 4 of Rule 13d-101 provides that the reporting person must state the purpose for acquiring the issuer's stock, including describing any plans or proposals (i) to acquire additional stock or to sell it; (ii) to engage in a "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation"; and (iii) to sell or transfer a "material amount of assets" of the issuer.

69. As set forth above, the Defendants failed to make the full and fair disclosure required by the Exchange Act and the rules promulgated thereunder, including, but not limited to, failing to disclose their plans and proposals for the Company.

70. By reason of the foregoing, Defendants violated Section 13(d) of the Exchange Act and Rule 13d-101 promulgated thereunder.

71. The Company has no adequate remedy at law.

## DECLARATORY AND INJUNCTIVE RELIEF

72. The Company hereby incorporates the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73. The Court may grant the declaratory and injunctive relief sough herein pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and 65. A substantial controversy exists because defendants are committing flagrant violations of the federal securities laws during an attempt to take control of the Company.

74. Unless relief is issued, as a result of their violations of the federal securities law, Defendants may succeed in taking control of the Company without shareholders having the opportunity to evaluate the options before them in a fair and even-handed manner and without the disclosure of key information to which the Company and its stockholders are entitled.

75. Plaintiff and the holders of the Company's shares face the prospect of immediate, severe and irreparable injury should the Defendants be permitted to proceed with their efforts to seek control of the Company, where material information has been omitted and U.S. security holders have been denied the opportunity to evaluate all of the material information that Section 13(d) of the Exchange Act entitles them to receive.

## PRAYER FOR RELIEF

76. WHEREFORE, Plaintiff My Size, Inc. respectfully requests that this Court enter Judgment against Defendants and in favor of Plaintiff, and that the Court issue an Order:

(a) Declaring that Defendants' proxy solicitation violates

Section 14(a) of the Exchange Act and Rules 14a-9 and 14a-12 promulgated thereunder;

(b) Declaring that the Defendants' Schedule 13D and the amendments thereto violate Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101 promulgated thereunder;

(c) Ordering Defendants to amend and correct by public means the misrepresentations and omissions in their Schedule 13D, and preliminarily and permanently enjoining Defendants from any trading in the Company's stock until they have done so;

(d) Ordering Defendants to disclose all communications made to any person or entity in furtherance of their unlawful proxy solicitation;

(e) Preliminarily and permanently enjoining Defendants from voting any shares owned at the time of their violations of Sections 14(a) and 13(d) of the Exchange Act;

(f) Preliminarily and permanently enjoining Defendants from submitting or purporting to submit the Insurgent Slate to the Company's stockholders for election to the Company's Board of Directors at the next annual meeting;

(g) Preliminarily and permanently enjoining Defendants from soliciting proxy votes for the Insurgent Slate or distributing any proxy materials regarding the Insurgent Slate;

(h) Awarding Plaintiff My Size, Inc. the costs and disbursements of this action including reasonable attorneys' fees and other legal costs; and

      (i)      Granting Plaintiff My Size, Inc. such other and further relief as this Court may deem just and proper.

Dated: October 19, 2021

By: /s/ *David K. Momborquette*

MCDERMOTT WILL & EMERY LLP
David K. Momborquette
M. Elias Berman
Timothy C. Cramton
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dmomborquette@mwe.com
eberman@mwe.com
tcramton@mwe.com

*Counsel for My Size, Inc.*