UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MY SIZE, INC.,<br>*Plaintiff*,<br><br>v.<br><br>MILTON C. AULT III, AULT ALPHA LP, AULT ALPHA GP LLC, AULT CAPITAL MANAGEMENT LLC, and AULT & COMPANY, INC.,<br><br>*Defendants*. | Civil No. 1:21-cv-08585<br><br>**Honorable Jed S. Rakoff** |

### AMENDED COMPLAINT[1]

Plaintiff My Size, Inc. ("My Size" or the "Company"), by its undersigned counsel, for its Amended Complaint against Defendants Milton C. Ault III, Ault Alpha LP ("Ault Alpha"), Ault Alpha GP LLC ("Ault Alpha GP"), Ault Capital Management LLC ("Ault Capital"), Ault & Company, Inc. ("Ault & Company" and together with Mr. Ault, Ault Alpha, Ault Alpha GP, Ault Capital and Ault & Company, the "Ault Defendants"), alleges, on knowledge as to itself and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is an action for disgorgement under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78p(b).

2. Section 16(b) applies to the directors and officers of every issuer of a class of publicly traded equity securities. Section 16(b) also applies to every beneficial owner of more than 10% of any such class. Under Section 16(b), these "insiders" must disgorge to the issuer any

---
[1] On November 8, 2021, the Court granted the Company leave to file an amended pleading. (See Exhibit A attached hereto.)

profit they realize from a purchase and sale, or a sale and purchase, of the issuer's equity securities occurring within a period of less than six months. Failure to disgorge this "short-swing" profit permits the issuer and others to bring suit to recover that profit.

3. Liability under Section 16(b) is strict. The profit from a short-swing transaction must be disgorged irrespective of any intention on the part of the insider in entering into such transaction. Recovery does not depend on proof of scienter, a breach of duty, or the actual misuse of inside information.

4. The Company brings this action against the Ault Defendants to recover the hundreds of thousands of dollars of short-swing profits realized by the Ault Defendants from their purchase and sale of the Company's common stock in violation of Section 16(b). That profit is now the lawful property of the Company, which the Ault Defendants are strictly liable to account for and repay to the Company.

## THE PARTIES

5. Plaintiff My Size is a Delaware corporation headquartered in Israel. My Size has developed and is in the process of commercializing a unique measurement technology based on sophisticated algorithms and cutting-edge technology with broad applications, including the apparel, e-commerce, DIY, shipping, and parcel delivery industries. The Company is listed on the Tel Aviv Stock Exchange and the Nasdaq Capital Market under the ticker symbol "MYSZ."

6. Defendant Milton Ault is a U.S. citizen, and upon information and belief, is a resident of California. Defendant Ault is what is often referred to as an "activist investor." An activist investor is generally defined as an investor that buys a significant stake in a public company in order to influence how that company is managed. He has appeared on a number of playlists on YouTube.com that focus on investing, including programs entitled "Risk On," "I've Given You Gold Now Run With It," and "Ault-onomous Podcasts," among others.

7. Defendant Ault Alpha is a Delaware limited partnership with its principal place of business in Las Vegas, Nevada. Defendant Milton Ault is the Chief Executive Officer of Ault Alpha.

8. Defendant Ault Alpha GP is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada, and is the general partner of Ault Alpha.

9. Defendant Ault Capital is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada, and is the GP of Ault Alpha GP as well as the investment manager of Ault Alpha. Defendant Milton Ault is the Chief Executive Officer of Ault Capital.

10. Defendant Ault & Company is a Delaware corporation with its principal place of business in Las Vegas, Nevada, and is the sole member of Ault Alpha GP and Ault Capital. Defendant Milton Ault is the CEO and Chairman of the Board of Directors.

## JURISDICTION AND VENUE

11. The Court has exclusive jurisdiction over this matter pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. Venue lies in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including the securities purchases and sales described herein, which were executed through the facilities of NASDAQ, a national securities exchange registered under Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.

## FACTUAL BACKGROUND

**The Relevant Purchases And Sales**

13. On September 23, 2021, the Ault Defendants filed a Schedule 13D with the SEC in regard to the Company (the "September Schedule 13D"). According to the September

Schedule 13D, between September 8, 2021 and September 23, 2021, the Ault Defendants purchased a total of 1,489,235 shares of common stock of the Company in a series of open market transactions at a price that varied between $1.2795 and $1.526 per share.

14. Although the September 13D states that the Ault Defendants purchased these shares because they believed that the Company's stock was "undervalued and presented an attractive investment opportunity," the Ault Defendants have produced no document in response to demands previously made in this action indicating that anyone associated with the Ault Defendants made any effort to analyze the value of the Company's stock prior to its rapid-fire purchases of close to 10% of the Company's outstanding stock.

15. On October 27, 2021, the Ault Defendants filed an amended Schedule 13D with the SEC in regard to the Company (the "October Schedule 13D"). According to the October Schedule 13D, on September 30, 2021, Defendant Ault Alpha purchased an additional 2,654 shares of common stock of the Company at a price of $1.4152 per share, bringing the total holdings of the Ault Defendants in the Company to 1,491,889 shares.

16. On October 26, 2021, the trading volume of the Company's stock surged to almost 1,900 times its average daily volume, pushing the price per share of the Company's stock to over $2 a share at certain times in the day. The October Schedule 13D revealed that on that very same day, the Ault Defendants sold a total of 1,491,889 shares of common stock of the Company at a price of $1.7134 per share, generating a profit of approximately $414,463.

**During The Relevant Time Period, The**
**Ault Defendants Were Members Of A Section 13(d) Group**

17. At the time of the aforementioned purchases and sales, the Ault Defendants were members of a Section 13(d) "group" that owned 10% or more of the Company's outstanding stock (the "Group"). In determining whether shareholders are considered to own 10% of the

issuer for purposes of Section 16(b), two or more shareholders who "agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer" are treated as a group that is deemed under Section 13(d) to hold beneficial ownership of all equity securities owned by any group members. If members of such a group together hold more than 10% of any class of equity securities of an issuer, then each group member is subject to the short-swing profit rule under Section 16(b).

18. The Group included an individual known as David Lazar, as well as two affiliated entities, Custodian Ventures LLC ("Custodian Ventures") and Activist Investing, LLC ("Activist Investing") (collectively, the "Lazar Group").[2] At the time of the aforementioned purchases and sales made by the Ault Defendants, the Lazar Group owned approximately 9.99% of the Company's outstanding stock, giving the Group ownership of close to 20% of the Company's outstanding stock from the end of September 2021 through October 26, 2021.

19. Mr. Lazar and Defendant Ault have worked together before having taken activist positions in the same companies in the past. For example, in 2020, Lazar and Ault Holdings, a company in which Defendant Ault serves as Executive Chairman, both made sizeable investments as a part of a shareholder activist campaign in a company known as Universal Security Instruments, Inc.

20. Similarly, according to a Schedule 13D filed with the SEC on November 2, 2020 by Mr. Lazar, Custodian Ventures and Activist Investing, Mr. Lazar acquired a 9.8% interest in a company known as Ikonics Corporation ("Ikonics"). According to a Schedule 13D filed with the SEC on January 14, 2021 by Ault Holdings, Ault Holdings subsequently acquired a 7.12%

---

[2] Mr. Lazar, Custodian Ventures, and Activist Investing were previously named as defendants in this action. Pursuant to a Notice of Voluntary Dismissal so ordered and entered by the Court on November 8, 2021 (Dkt. No. 43), Mr. Lazar, Custodian Ventures, and Activist Investing (among other defendants) were voluntarily dismissed with prejudice from the action, and there are no allegations of wrongdoing asserted against the Lazar Group made herein.

interest in Ikonics.

21.     In addition, Mr. Lazar and Defendant Ault also are both familiar with a type of transaction known as a "reverse merger."  A reverse merger usually involves a transaction whereby a shell entity is merged into another company to form a new publicly traded entity.  One perceived advantage of a reverse merger is that it permits an entity to become a public company without having to go through the relatively more time-consuming and expensive IPO process.

22.     On May 12, 2021, Custodian Ventures delivered a letter to the Company purporting to nominate a slate of directors for election at the Company's next annual meeting of stockholders (the "Lazar Slate").  In materials subsequently filed with the SEC, the Lazar Group announced its intent to file a proxy statement to be used to solicit votes for the election of the Lazar Slate.

23.     The Lazar Group and its representatives subsequently engaged in a series of discussions with the Company and its representatives regarding the future of the Company, including its corporate structure.  In June 2021, Custodian Ventures submitted a books and records demand to the Company.

24.     On September 22, 2021, Custodian Ventures sued the Company in the Court of Chancery of the State of Delaware to compel the Company to hold its annual meeting for the elections of directors (the "Delaware Action").  That action was commenced the day before the Ault Defendants filed its September Schedule 13D indicating that it had purchased approximately 9.9% of the Company's outstanding stock between September 8, 2021 and September 23, 2021.

25.     Defendant Ault kept Mr. Lazar informed regarding the Ault Defendants' purchases of stock in the Company prior to the filing of any Schedule 13D by the Ault

Defendants. During September 2021, Mr. Lazar also was communicating with Defendant Ault regarding the Delaware Action, including the timing of the filing of the complaint. Accordingly, Defendant Ault knew as he was building a position in the Company that Mr. Lazar would be proceeding on an expedited basis with the lawsuit and was going to request soon after commencing the action that the Court set a date for the Company's annual meeting so that Custodian Ventures could put the Lazar Slate to a shareholder vote. The Ault Defendants also knew from their communications with Mr. Lazar the approximate date by which it had to purchase stock in the Company to ensure that the purchased shares could be voted for the Lazar Slate at the Company's next annual meeting.

26. The day after the Ault Defendant filed the September 13D, Defendant Ault boasted on a program he co-hosts on YouTube about his investment in the Company, and he stated that the Company should restructure itself by merging with another public company in a transaction similar to one involving a company in which both Defendant Ault and Mr. Lazar previously had invested. Specifically, Defendant Ault stated the following at 14:38 minutes into his YouTube show:

> We announced a position in My Size, we have bought 9.9% of it…we think this company should merge with another public company very similar to Ikonics and we are going to be pushing for them to take action and get the company into another business.

27. At 16:22 minutes into the program, Defendant Ault admitted that he had done deals with Mr. Lazar in the past, and that collectively they controlled 20% of the outstanding stock in the Company.[3]

28. Although Defendant Ault has disclaimed any involvement in a group that

---

[3] A link to the full clip that this quote is taken from can be found at https://www.youtube.com/watch?v=5O50uqOVhVU.

included Mr. Lazar, it strains credulity not to conclude given the facts alleged above that by some point in September 2021, the Lazar Group and the Ault Defendants had reached an understanding that shares of the Company's stock would be purchased during a period that would ensure that they could be voted for the Lazar Slate at the Company's next annual meeting. Such an understanding renders the Ault Defendants members of a "group" for purposes of Section 16(b).

29. In short, since the Ault Defendants' purchases and sales were done at a time when the Ault Defendants were members of a group that beneficially owned over 10% of the Company's stock, those purchases and sales violated Section 16(b), and accordingly, the Ault Defendants should be ordered to disgorge to the Company the profit made on those purchases and sales.

## FIRST CLAIM FOR RELIEF

## DISGORGEMENT UNDER 15 U.S.C. § 78p(b)

30. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1-29 above.

31. Section 16(b) of the Securities Exchange Act of 1934, as amended, states in pertinent part as follows:

> For the purpose of preventing the unfair use of information which may have been obtained by [a 10 percent] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a

> period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b).

32. At all relevant times, the Ault Defendants were beneficial holders of more than 10% of the equity securities of the Company by reason of their membership in the Group, and accordingly, were subject to Section 16 of the Exchange Act.

33. While subject to Section 16 of the Exchange Act, the Ault Defendants purchased a total of 1,491,889 shares of the Company's common stock at the prices that varied ranged between $1.2795 and $1.526 per share as further described herein.

34. While subject to Section 16 of the Exchange Act, the Ault Defendants sold 1,491,889 shares of the Company's common stock at the price of $1.7134 per share asfurther described herein.

35. The sales described in paragraph 16 above occurred within less than six months of the purchases described in paragraphs 13 and 15 above.

36. The sales described in paragraph 16 above were made at a higher price than the purchases described in paragraph 13 and 15 above.

37. The Ault Defendants had a direct or indirect pecuniary interest in all of the shares of the Company's common stock purchased and sold as described in paragraphs 13 and 15-16 above.

38. The Ault Defendants realized a profit of approximately $414,463 from the transactions described in paragraph 16 above. Under Section 16(b) of the Exchange Act, that profit inured to the Company and remains the lawful property of the Company, recoverable by it.

**DEMAND FOR JURY TRIAL**

39. Plaintiff My Size respectfully demands a trial by jury on all questions so triable.

**PRAYER FOR RELIEF**

40. WHEREFORE, Plaintiff My Size, Inc. respectfully requests that this Court enter Judgment against Defendants and in favor of Plaintiff, and that the Court issue an Order:

41. Requiring the Ault Defendants to account for and pay over to the Company the short-swing profit realized and retained by them in violation of Section 16(b) of the Exchange Act in an amount not less than $414,463 together with appropriate pre- and post-judgment interest and the costs of this suit;

42. Awarding the Company its costs and disbursements including reasonable attorney's, accountant's, and expert witness fees; and

43. Granting the Company such further relief as the Court deems just and proper.

Dated: November 19, 2021          By: /s/ *David K. Momborquette*

                                  MCDERMOTT WILL & EMERY LLP
                                  David K. Momborquette
                                  M. Elias Berman
                                  Timothy C. Cramton
                                  One Vanderbilt Avenue
                                  New York, NY 10017-3852
                                  Telephone: (212) 547-5400
                                  Facsimile: (212) 547-5444
                                  dmomborquette@mwe.com
                                  eberman@mwe.com
                                  tcramton@mwe.com

                                  *Counsel for My Size, Inc.*